IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TUESDAY S. BANNER, | : | |
| Plaintiff, | : : : | |
| v. | : | Civ. No. 14-691-LPS |
| GENELLE FLETCHER, | : : | |
| Defendant. | : : | |

Tuesday S. Banner, New Castle, Delaware, Pro Se Plaintiff.

Carla Anne Kingery Jarosz, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

February 14, 2020
Wilmington, Delaware

*[signature]*

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Tuesday S. Banner ("Banner" or "Plaintiff") proceeds *pro se* and was granted leave to proceed *in forma pauperis*. She filed this action pursuant to 42 U.S.C. § 1983, alleging retaliation for filing an anti-discrimination claim, and has amended several times to allege violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (D.I. 2; D.I. 6; D.I. 33) The matter proceeds on the Third Amended Complaint and the only claims that remain arise under the FMLA. (*See* D.I. 57; D.I. 58) Pending is Defendant Genelle Fletcher's motion for summary judgment, opposed by Plaintiff. (D.I. 92) For the reasons that follow, the Court will grant the motion.

## II. BACKGROUND

The Third Amended Complaint alleges wrongful acts that resulted in the denial of FMLA leave and the termination of Plaintiff's employment. The matter proceeds on two FMLA claims against Genelle Fletcher ("Fletcher" or "Defendant") in her individual capacity.[1] (*See* D.I. 57 at V) All other claims have been dismissed. (*See* D.I. 57; D.I. 58) Plaintiff claims that: (1) Defendant violated her rights under the FMLA by denying Plaintiff's recertification request for leave on December 21, 2012; and (2) her employment was terminated in retaliation for exercising her rights under the FMLA. (*See id.*)

Plaintiff began her employment with the Delaware Department of Health and Social Services, Division of the Visually Impaired ("DHSS/DVI") as an Administrative Assistant I in

---

[1] Plaintiff's opposition to the instant motion includes references and facts for many of the previously dismissed harassment and discrimination claims. They are not considered.

1

October 2005 and was employed by DHSS/DVI until her employment was terminated on March 1, 2013. (D.I. 94 at 5-6; *see also id.* at 5) In March 2010, Defendant became Plaintiff's supervisor at DHSS/DVI. (*Id.* at 6, 56)

Plaintiff was provided FMLA and short term disability in 2007. (D.I. 97 at 55-57) Plaintiff testified she understood her rights under the FMLA were that she "was able to take leave as needed for my condition that was stated in the FMLA leave." (D.I. 94 at 8) FMLA leave was "about twelve weeks." (*Id.*) Plaintiff applied, and was approved for, leave under the FMLA in February 2007 for prenatal care. (*Id.* at 7, 114) In September 2007, she applied for intermittent FMLA leave to care for her child. (*Id.* at 10, 114) Plaintiff explained that the care "wasn't a block of time. So whenever I needed to, whenever my son would get sick, he had doctor appointments, different appointments I was allowed to submit FMLA for – to care for him." (*Id.* at 10) The intermittent FMLA leave was approved. (*Id.* at 11, 114) Plaintiff testified that she recertified her FMLA leave every year around the same time – around September of every year. (*Id.* at 11-12) DHSS/DVI asked Plaintiff to reapply for the FMLA leave to care for her child, and the leave was approved each time for the years 2008, 2009, 2010, 2011, and 2012. (*Id.* at 11-12, 114) Plaintiff testified that she has always had FMLA. (*Id.* at 11)

In 2012-2013, DHSS managers and supervisors tracked employee FMLA leave. (D.I. 97 at 3) According to DHSS Human Resources Manager/ACT Case Administrator Janet Mays ("Mays"), during this time DHSS used a rolling 12-month period, as permitted by 29 U.S.C. § 825.200(b)(3), to calculate the 12-month period during which its employees could take FMLA leave. (*Id.*) Mays explained, "[e]ssentially, DHSS looks back twelve months to determine FMLA eligibility and then counts FMLA usage forward from the date FMLA is first designated." (*Id.*) The 2011 Human Resources Procedures Manual confirms that the manner of calculation chosen by DHSS is that

contemplated by 29 C.F.R. § 825.200(b)(3). (*Id.* at 3-4) The method of calculation is also contained in the State of Delaware Human Resources Procedures Manual. (*Id.* at 34)

In June 2012, Plaintiff applied for intermittent FMLA leave for her own medical condition – work related stress – and it was approved on June 26, 2012 for "1-2 times every 1-2 months, up to 3 days at a time." (D.I. 94 at 14, 16, 114, 124) Fletcher's name appeared on the paperwork for June and each time that Plaintiff subsequently sought FMLA leave. (*Id.* at 14, 118, 124, 138) The last day Plaintiff worked at DHSS/DVI was September 3, 2012. (*Id.* at 5) Plaintiff testified that she came in to work on September 4, 2012 to turn in her paperwork from her physician who "took [her] out of work" from September 4, 2012 to October 5, 2012 to return on October 8, 2012. (*Id.* at 5, 133)

On October 2, 2012, Plaintiff applied for block FMLA leave for herself beginning on September 4, 2012 for the same condition for which she had sought intermittent FMLA leave in June 2012. (*Id.* at 114, 118-23; *compare* 120 at ¶ 4 to 124 at ¶ 4) DHSS/DVI approved the leave and noted: "FMLA [d]esignated for continuous leave from 9/4/12 through 12/5/12 until available FMLA hours have been used. Intermittent approved at the rate of 1-2 times every 1-2 months for up to 3 days at a time." (*Id.* at 118) The notice stated, "Because the leave you need will be unscheduled, it is not possible to provide hours, days, or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30-day period (if leave was taken in the 30-day period.)" (*Id.* at 118) Plaintiff testified that she understood she was authorized for block FMLA leave that was approved from September 4, 2012 until December 5, 2012. (*Id.* at 17) Plaintiff was also approved for short term disability through DHSS/DVI's short term disability provider, The Hartford. (*Id.* at 128-32) The short term disability was approved from October 4, 2012 through November 13, 2012. (*Id.* at 132)

3

On December 4, 2012, Plaintiff provided DHSS/DVI with a physician's note. (*Id.* at 134) The note states that Plaintiff "should be off from work/school from 12/4/12 to – and return on has follow up app 12/11." (*Id.* at 134) Plaintiff did not provide DHSS/DVI with an updated doctor's note following the scheduled December 11, 2012 appointment. (*Id.* at 58)

On December 13, 2012, Defendant notified Plaintiff via certified mail that, because she had been continuously absent from work since September 4, 2012, her absence would no longer be covered by FMLA after November 7, 2012, and that Plaintiff's short term disability claim with The Hartford continued to remain in a terminated status. (*Id.* at 78, 135-137) Plaintiff was advised that her absence as of November 14, 2012 "is considered unauthorized." (*Id.* at 135) Plaintiff was advised to return to work on or before December 28, 2012, if she was able to do so. (*Id.*) Plaintiff was further advised that if she was unable to return to work, she had the option of: (1) obtaining approval from The Hartford for additional short term disability; (2) obtaining written approval from DHSS/DVI for a leave of absence without pay; or (3) resigning her employment. (*Id.* at 135-37) On December 13, 2012, The Hartford wrote to Plaintiff advising her that she had not submitted proof of an ongoing disability and that short term disability benefits were not payable to her after November 13, 2012. (*Id.* at 143-45)

On December 21, 2012, Plaintiff submitted a recertification for FMLA leave requesting leave beginning December 6, 2012 and ending March 7, 2013. (*Id.* at 138-42) On December 24, 2012, the request was denied because Plaintiff had exhausted her "available FMLA leave entitlement in the applicable 12-month period." (*Id.* at 78-79, 83, 138, 178-79) On the same day, Defendant wrote to Plaintiff and reiterated that Plaintiff had exhausted all her FMLA time, noting that Plaintiff had been continuously absent from work since September 4, 2012. (*Id.* at 178-79) Plaintiff's 2012 annual leave report confirms Plaintiff's continued absence from work. (*Id.* at 173-77) The annual leave

report reflects that Plaintiff's absences after November 14, 2012 through December 31, 2012 were not reported as FMLA leave but as leave of absence without pay. (*Id.*)

On December 27, 2012, Plaintiff emailed DVI human resources representative Alice Clark ("Clark") to complain about Defendant, and Clark responded that while numerous messages had been left for Plaintiff, it was not until December 27, 2012 that she first responded. (*Id.* at 156, MERB June 28, 2015 decision) Clark advised Plaintiff that she had received notification that Plaintiff's FMLA benefits expired on November 7, 2012, her short term disability had been terminated by The Hartford, and, therefore, Plaintiff was required to return to work on December 28, 2012. (*Id.*) Plaintiff responded later that day that she had been on approved FMLA leave since September 4 and questioned how she could have used up all her FMLA hours. (*Id.* at 157) Clark replied in a December 28, 2012 email that "the FMLA hours [Plaintiff] used for her son, as well as the hours used for herself, all came from the same annual allotment of FMLA protected hours." (*Id.*)

Plaintiff did not report to DVI to return to work on December 28, 2012. (*Id.*) Nor did she exercise any of the options offered in the December 13, 2012 letter. (*Id.* at 63-64, 85-86) Plaintiff testified that she did not seek written approval for a leave of absence since, at the time, she was in the short term disability process and waiting for The Hartford to make a decision on her short term disability.[2] (*Id.* at 30-33, 82)

---

[2] On January 4, 2013, The Hartford wrote to Plaintiff that her claim had been closed, she had not met the criteria for short term disability benefits, and no benefits were payable to her beyond November 13, 2012. (*Id.* at 147-48) Plaintiff appealed this decision, and her appeal was denied on January 3, 2013. (*Id.* at 147) Plaintiff appealed the January 3, 2013 determination on April 6, 2013, by which time her employment had been terminated. (*Id.* at 95-96) She prevailed and received retroactive short term disability benefits from The Hartford from November 14, 2012 through February 28, 2013. (*See* D.I. 94 at 158, MERB June 28, 2016 decision) On January 3, 2020, long after the time for Plaintiff to file a sur-reply (had she sought leave to do so), Plaintiff filed

5

On January 9, 2013, DVI Director Robert Doyle ("Doyle") advised Plaintiff that he was proposing her dismissal from DHSS/DVI because she had not returned to work following expiration of her FMLA and short term disability, she had exhausted all her leave, failed to follow supervisory directives, and failed to return to work as directed. (*Id.* at 150-51) Doyle advised Plaintiff that she could request a pre-termination hearing, and Plaintiff did. (*Id.* at 44, 151) Plaintiff did not attend the hearing but instead provided documentation of a dual power of attorney and was represented by her religious advisor and her father. (*Id.* at 44, 66-67) On March 1, 2013, DHSS Secretary Rita Landgraf ("Landgraf") notified Plaintiff that she had reviewed Doyle's recommendation and concluded Plaintiff's dismissal was appropriate because Plaintiff was notified that her absences were not covered by FMLA or short term disability, yet she remained out of work. (*Id.* at 44-45)

On April 11, 2013, Plaintiff appealed the termination of her employment to the Merit Employee Relations Board ("MERB"). (*Id.* at 152) Following an evidentiary hearing, MERB upheld the decision to terminate Plaintiff's employment. (*Id.* at 153-61) It found that Plaintiff was informed that her leave was unauthorized, she was given options to return to work, remained on unauthorized leave, and failed to return to work on December 28, 2012, despite a clear directive from her employer to do so. (*Id.* at 160) Plaintiff appealed the MERB's decision to the Superior Court for the State of Delaware. (*Id.* at 62) On appeal, Plaintiff argued that her employment status was protected by short term disability. (*Id.* at 169-70) The Superior Court affirmed the MERB decision. (*Id.*) The Superior Court found that the MERB's valid disciplinary-related reason supported termination of Plaintiff's employment because she failed to report to work and to

---

documents she had previously submitted for continued short term disability benefits. (*See* D.I. 99; D.I. 99-1 at 1-4; D.I. 99-3 at 1-3)

communicate with her employer regarding her employment status. (*Id.*) Plaintiff appealed the decision to the Delaware Supreme Court, which summarily affirmed the judgment of the Superior Court. (*Id.* at 171-72) In the meantime, Plaintiff sought, and was ultimately awarded, unemployment compensation. (D.I. 97 at 71-103)

### III. LEGAL STANDARDS

A grant of summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the Court can determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

7

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## IV. DISCUSSION

### A. FMLA and Short Term Disability Benefits

FMLA leave and short term disability benefits are not one and the same. The Hartford, not DHSS/DVI, managed Plaintiff's short term disability benefits. The Hartford initially approved Plaintiff for short term disability but later determined that, as of January 4, 2013, Plaintiff no longer met the criteria for short term benefits; it closed Plaintiff's claim. Plaintiff's employment was terminated on March 1, 2013. She did not appeal the denial of the short term benefits until April 2013, and the record does not reflect that DHSS/DVI or any of its employees were aware of Plaintiff's appeal. Plaintiff prevailed on appeal and received retroactive short term disability benefits from The Hartford from November 14, 2012 through February 28, 2013.

### B. FMLA Interference

Defendant moves for summary judgment on the grounds that she did not interfere with Plaintiff's rights under the FMLA because Plaintiff had already exhausted all FMLA leave available to her when she made the December 21, 2012 request to continue FMLA leave. Plaintiff responds that Defendant failed to comply with the notice requirements of 29 U.S.C. § 2617 and 29 C.F.R. §§ 825.300(b) and (c) and miscalculated her amount leave, in violation of 29 C.F.R. ¶ 825.200(d)(1) and (e).

"An interference action is not about discrimination; it is only about whether the employer provided the employee with the entitlement guaranteed by the FMLA." *Callison v. City of*

8

*Philadelphia*, 430 F.3d 117, 119-20 (3d Cir. 2005). To withstand summary judgment, Plaintiff need only point to record evidence that suggests that she was "entitled to a benefit under the FMLA that h[er] employer withheld." *Duncan v. Chester Cty. Hospital*, 677 F. App'x 58, 61 (3d Cir. 2017).

The FMLA provides eligible employees the right to take up to twelve-weeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). The statutory framework provides that an employer may not interfere with or otherwise deny the exercise of the rights provided by the FMLA. 29 U.S.C. § 2615(a)(1).

To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citations omitted); *see also Egan v. Delaware River Port Auth.*, 851 F.3d 263, 270 (3d Cir. 2017) ("The right could be interfered with by, for example, prohibiting the individual who has such a condition from being permitted to take such leave or by requiring the person to engage in significant work while on FMLA leave."). "[I]nterference includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Grosso v. Fed. Express Corp.*, 467 F. Supp. 2d 449, 463-64 (E.D. Pa. 2006) (quoting 29 C.F.R. § 825.220(b)). The statutory scheme does not, however, provide protection against termination for a reason other than interference. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (noting that if employer could prove it terminated plaintiff for reasons other than his intention to exercise his FMLA rights, then plaintiff could not prevail).

At issue is whether Plaintiff was denied benefits to which she was entitled under the FMLA.

9

### 1. Notice

"The FMLA requires employers to provide employees with both general and individual notice about the FMLA." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3d Cir. 2014). Once an employer is made aware that an employee is taking FMLA-qualifying leave, the employer must provide the employee with written notice that details: (1) the employee's eligibility for FMLA leave as set forth in § 825.110 that defines an eligible employee; (2) whether the employee's leave will be designated as FMLA leave; (3) the employee's obligations under the FMLA and any consequences for not meeting them; and (4) the specific amount of leave that will be counted against the employee's 12-week FMLA leave allotment. *Id.* (citing 29 C.F.R. § 825.300). All FMLA absences for the same reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period. 29 C.F.R. § 825.300(b)(1). Eligibility notification may be oral or written. (*Id.*)

Section 825.300(c), "rights and responsibilities notice," provides that an employer shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. (*Id.* at § 825.300(c)(1)) The notice shall be provided to the employee each time the eligibility notice is provided under § 825.300(b).

Plaintiff argues that Defendant violated §§ 825.300(b) and (c) because, when she was approved for continuous leave, she was not notified within five days that there had been a change in her available leave. (D.I. 95 at 13-14) Plaintiff's reliance on § 825.300(b) and (c) is misplaced. The record evidence indicates that Plaintiff sought FMLA leave for work related stress in June 2012. She sought FMLA leave for the same condition in her October and December requests. As discussed above, the notice requirement is triggered "at the commencement of the first instance of

leave for each FMLA-qualifying reason in the applicable 12-month period," 29 C.F.R. § 825.300(b)(1), and "[a]ll FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period," *id.* Plaintiff's requests for FMLA leave made in October and December 2012 are based on the same condition for which she sought FMLA leave in June 2012. Because Defendant notified Plaintiff that she was eligible for FMLA leave on June 26, 2012, Defendant was not required to provide her additional FMLA eligibility notice for subsequent absences related to the same qualifying reason for the following twelve-month period. *See DeVoss v. Southwest Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018). Because all events from September 2012 through March 2013 were within this period, written notification was not required under §§ 825.300 (b) and (c). *See Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 485-486 (E.D. Pa. 2014).

### 2. Amount of Leave

Under 29 C.F.R. § 825.200(d), an employer may choose one of four methods for calculating the twelve-month period during which its employees are entitled to twelve weeks of leave. The four methods are (1) the calendar year; (2) any fixed twelve-month leave year; (3) a twelve-month period measured forward from the date any employee takes her first FMLA leave; or (4) a twelve month period measured backward from the date an employee uses any leave. *See* 29 C.F.R. § 825.200(b). Together, 29 C.F.R. § 825.200(d)(1) and (e) provide that if an employer does not select one of the four methods for calculating the twelve-month leave entitlement period listed in 29 C.F.R. § 825.200(6), then the option that provides the most beneficial outcome for the employee will be used.

Plaintiff argues Defendant used an incorrect method in finding she was ineligible for FMLA leave recertification on December 21, 2012. (D.I. 95 at 10) Plaintiff also contends that she was

11

not informed of the method upon which her 12-month period calculation was based. In her oppositions to summary judgment Plaintiff first posits that the recertification (*i.e.*, calculation) date is October 1 (in her reply brief) and then indicates the date is October 31 (in her sur-reply brief) but provides no evidence or affidavit to support either claim. Using her "new certification date(s)," Plaintiff argues that the 12-month period for calculation of FMLA leave commenced on October 1, 2012 and, therefore, she had three to four weeks of available leave when she asked for recertification on December 21, 2012. Plaintiff's unsupported statements are contrary to her deposition testimony – when she testified that it was around September that the FMLA calculations began and – do not create a genuine dispute of material fact.

Plaintiff also takes the position that Defendant failed to provide her the optional rights and responsibilities notice when she requested the FMLA leave continuation and, as a result, she is permitted to choose the method of calculation of her eligible 12-month period under 29 C.F.R. §§ 825.200(d)(1) and (e). The regulations say no such thing. Rather, § 825.200(d) provides that if an employer fails to select one of the available options for measuring the 12-month period for the leave entitlements, then the option that provides the "most beneficial outcome" for the employee will be used. The undisputed evidence is that DHSS/DVI calculated FMLA entitlement leave under 29 C.F.R. § 825.200(b)(3); that is, the 12-month period measured forward from the date an employee takes her first FMLA leave. (*See* D.I. 97 at 3-4)

The record reflects that Plaintiff's intermittent absence coupled with continual absence beginning September 4, 2012, for the "same qualifying reason" (*i.e.*, work related stress), resulted in exhaustion of FMLA leave and, on December 13, 2012, she was notified that her absence from work would not be covered by FMLA after November 7, 2012. By mid-November, Plaintiff had exhausted the twelve weeks of FMLA leave to which she was entitled. Notably, even when not

counting the intermittent leave approved in June 2012, it is undisputed that Plaintiff remained continually absent from work from September 4, 2012 until March 1, 2013 – that is, some 25 weeks, long past the allowable twelve weeks of FMLA leave.

Plaintiff was not entitled to FMLA benefits at the time of her request on December 21, 2012. She had exhausted her FMLA leave by that date, and her leave remained exhausted when her employment terminated. The undisputed fact that Plaintiff was terminated from her position after she exhausted her FMLA leave does not provide a basis for a claim of FMLA interference. *See Panto v. Palmer Dialysis Center*, 2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) ("Because [plaintiff] was not eligible for FMLA leave at the time her employment was terminated, she cannot establish an interference claim under the FMLA.").

Plaintiff has failed to meet her burden to show she was denied FMLA benefits to which she was entitled when she requested them in December 2012. She exhausted her benefits, had no leave available to her and, therefore, cannot prevail on a FMLA interference claim based on denial of her additional leave. Accordingly, the Court will grant Defendant's motion for summary judgment on the FMLA interference claim.

### C. Retaliation

Defendant moves for summary judgment to the extent Plaintiff asserts the termination of her employment was an act of retaliation. Defendant argues that summary judgment is appropriate because Plaintiff's employment was terminated when she did not come to work, her absence was not authorized, and she did not communicate with DHSS/DVI regarding her absence.

Plaintiff responds that the adverse employment action was that she was terminated and the causal link to the FMLA violation was that Defendant's recommendation for termination was based upon the unauthorized absences Defendant levied against Plaintiff after stripping Plaintiff of FMLA

coverage for that period. She contends that "by the mere nature of the retaliation statute, if the termination was predicated upon the violation of FMLA then the termination becomes the fruit of the poisonous tree, thus it too is invalid." (D.I. 95 at 18) Plaintiff rests her position of unjust termination upon the fact that she was awarded unemployment insurance benefits, her employment was terminated for being in an unauthorized absence status while paying her for the same period of authorized time but refusing to rehire her, her termination stemmed from her medical condition for which she was being treated, and the MERB did not allow Plaintiff to present testimony from her primary care physician regarding the severity of disability. (*Id.* at 19)

Plaintiff's FMLA retaliation claim is subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Neidigh v. Select Specialty Hospital-McKeesport*, 664 F. App'x 217, 220 (3d Cir. 2016) (applying burden-shifting standards to FMLA retaliation claims); *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) ("Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law."); *Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 555 (3d Cir. 2009) ("We apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* . . . to . . . retaliation claims under the . . . FMLA.").

To establish a prima facie case for retaliation under the FMLA, Plaintiff must show that: (1) she is protected under the FMLA; (2) she suffered an adverse employment action; and (3) a causal relationship exists between the decision to terminate her and the exercise of FMLA rights. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). Once a plaintiff makes a prima facie showing, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

14

If the employer succeeds on this point, then "the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was false . . . and that retaliation [or the protected trait] was the real reason for the adverse employment action.'" *Id.* (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)). Although the burden of production shifts under this analysis, the burden of proof always stays with the plaintiff. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If Defendant meets her burden to show a non-discriminatory or non-retaliatory reason for termination, Plaintiff must then "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [ ] reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002). In discrediting Defendant's proffered reason, Plaintiff cannot simply show that Defendant's decision was wrong or ill-conceived. *See May v. PNC Bank*, __F. Supp. 3d__, 2020 WL 370043, at *5 (E.D. Pa. Jan. 22, 2020). Plaintiff must show that there is a genuine dispute as to whether retaliation motivated the defendant's actions. *See Fuentes*, 32 F.3d at 765. The relevant inquiry is the perception of the decision-maker, not Plaintiff's view of her own performance. *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir. 1992) (pretext turns on qualifications and criteria identified by employer, not categories plaintiff considers important).

The requirement that an employee "take" FMLA leave is the invocation of FMLA rights, not actual commencement of leave. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). "The main factors in determining a causal link between a protected activity and an adverse employment action are timing and a pattern of antagonism . . . ." *White v. School Dist. of Philadelphia*,

2008 WL 2502137, at *7 (E.D. Pa. June 19, 2008), *aff'd*, 326 F. App'x 102 (3d Cir. 2009). After the plaintiff has made a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries that burden, the burden shifts back to the plaintiff to prove that the legitimate reasons were not the defendant's true reasons but, instead, were pretextual.

Plaintiff has not presented a prima facie case of retaliation. Plaintiff used FMLA leave for years without issue and over two months passed following exhaustion of her FMLA leave and the termination of her employment. *See Ward v. Ingersoll-Rand Co.*, 688 F. App'x 104, 111 (3d Cir. 2017) (greater than two-month timespan by itself does not support casual inference).

Additionally, even assuming Plaintiff has presented a prima facie case of retaliation under the FMLA, Defendant has proffered legitimate, non-retaliatory reasons for its adverse employment action. Plaintiff did not follow her employer's directive to return to work or its other directives of what to do if she was unable to return to work. The record indicates that since 2007 Plaintiff requested and was given FMLA leave on a yearly basis. In 2012, Plaintiff sought FMLA leave on three occasions for the "same qualifying condition;" it was granted on two occasions and, when Plaintiff had exhausted her twelve weeks of FMLA leave, she was notified twice by letter and once by email (on December 13, 24, and 28, 2012) and given options on how to proceed: (1) obtain approval from The Hartford for additional short term disability; (2) obtain written approval from DHSS/DVI for a leave of absence without pay; (3) resign her employment; or (4) return to work on December 28, 2012, if she was able to do so.

Plaintiff did not avail herself of any of the offered options. Instead, she submitted a recertification for FMLA leave even though she had exhausted the allowable twelve weeks and did not return to work. Plaintiff testified that she did not seek approval for a leave of absence because

16

at the time she was in the short term disability process and waiting for The Hartford to make a decision on her short term disability. On January 4, 2013, The Hartford denied Plaintiff's claim for short term disability benefits; also, the DVI Director recommended Plaintiff's dismissal from DHSS/DVI because she had not returned to work following expiration of her FMLA and short term disability, she had exhausted all her leave, failed to follow supervisory directives, and failed to return to work as directed. On March 1, 2013, the DHSS Secretary notified Plaintiff her employment was terminated because her absences were not covered by FMLA or short term disability, yet she still remained out of work. Plaintiff appealed The Hartford's denial of short term disability on April 6, 2013, approximately one month after Plaintiff's employment had been terminated. Nothing in the record indicates that Defendant was aware Plaintiff intended to appeal the denial prior to the March 1, 2013 termination date.

Nor does the record contain evidence of pretext. As noted, Plaintiff sought and was provided FMLA leave every year since 2007. Her June and October 2012 requests were also allowed. It was not until after she exhausted her allowable twelve weeks leave that she was denied FMLA leave. Notably, even after she exhausted her leave, she was provided with options to protect her employment. Again, however, the record reflects that Plaintiff did not avail herself of those options.

No reasonable jury could find for Plaintiff on the retaliation claim or that her termination was pretextual. Defendant proffered a legitimate, nondiscriminatory reason for the adverse employment action. The decision to terminate Plaintiff's employment was based upon her failure to return to work or to exercise the options available to her if she was unable to return to work. Therefore, the Court will grant Defendant's motion for summary judgment on the retaliation claim.

## V. CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment.[3]
(D.I. 92)

An appropriate Order will be entered.

---

[3] Because summary judgment is appropriate on other grounds, the issue of claim preclusion is not addressed other than to note that during the initial MERB proceedings, the main issue addressed was that Plaintiff was terminated only for failing to return to work. (D.I. 94 at 66)

18